Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Elaine E. Bucklo | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 2739 | **DATE** | 9/23/2002 |
| **CASE TITLE** | Graff vs. National Railroad | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____ Reply to answer brief due _____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order granting defendant Amtrak's motion for summary judgment. Judgment is therefore entered in favor of defendant and against plaintiff. Any pending motion in this case is terminated as moot. All schedules set in this case are also vacated.

(11) ■ [For further detail see order attached to the original minute order.]

| | | |
|---|---|---|
| | No notices required, advised in open court. | |
| | No notices required. | number of notices |
| ✓ | Notices mailed by judge's staff. | |
| | Notified counsel by telephone. | SEP 24 2002 date docketed |
| | Docketing to mail notices. | |
| ✓ | Mail AO 450 form. | docketing deputy initials |
| | Copy to judge/magistrate judge. | 9/23/2002 date mailed notice |
| MPJ | courtroom deputy's initials | MPJ mailing deputy initials |
| | Date/time received in central Clerk's Office | |

Document Number: 40

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DOCKETED
SEP 24 2002

| | |
|---|---|
| BARBARA GRAFF, | ) |
| Plaintiff, | ) |
| v. | ) |
| NATIONAL RAILROAD PASSENGER CORPORATION, | ) No. 00 C 2739 |
| Defendant. | ) |

### MEMORANDUM OPINION AND ORDER

Plaintiff Barbara Graff sued Defendant National Railroad Passenger Corporation ("Amtrak"), as well as other parties who have since been dismissed, for injuries relating to a stroke she suffered while a passenger on board an Amtrak train to Chicago. This case was originally brought in Illinois state court, but was removed by Amtrak. I have jurisdiction because Amtrak was incorporated by an act of Congress, and the United States owns a majority of its capital stock. See 28 U.S.C. § 1331; 28 U.S.C. § 1349; *Vasquez v. North County Transit Dist.*, 292 F.3d 1049, 1060 (9th Cir. 2002). Amtrak now moves for summary judgment. I grant the motion.

I. Background

On March 27, 1998, Ms. Graff and her two adult daughters, Amber Nelson and Carrie Wiberg, were passengers on board an Amtrak train traveling from Little Rock, Arkansas to Chicago. At 3:14 p.m., the train left Joliet Station en route to Chicago Union



Station. Shortly after departure, Ms. Graff suffered a stroke. At 4:10 p.m., the train arrived at Union Station. By 4:26 p.m., two emergency units from the Chicago Fire Department had arrived on the scene and made contact with Ms. Graff by 4:32 p.m. The paramedics left Union Station with Ms. Graff at 5:00 p.m. and arrived at Northwestern Memorial Hospital at 5:10 p.m.

At the hospital, Dr. Teepu Siddique, a neurologist, determined that Ms. Graff was a candidate for the administration of a drug known as tPA because less than three hours had passed since the onset of her stroke. The medical consensus in this case is that there is an approximately 30% chance of improvement or complete recovery in patients who receive tPA within three hours of a stroke. There are, however, also risks associated with the administration of tPA. Dr. Siddique was unable to get consent for this treatment from Ms. Graff's daughters within the three hour window so tPA was not administered.

Ms. Graff alleges that Amtrak's failure to make arrangements so that she would have gotten medical attention earlier caused or contributed to her injuries, including a reduced chance of recovery. Summary judgment is proper when "there is no genuine issue as to any material fact and. . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Popovits v. Circuit City Stores, Inc., 185 F.3d 726, 731 (7th Cir. 1999) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322-23

(1986). In determining whether a genuine issue of material fact exists, I "construe all facts in the light most favorable to the nonmoving party and draw all reasonable and justifiable inferences in that party's favor." *Popovits*, 185 F.3d at 731 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). However, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *see also Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994).

## II. Analysis

In order for Ms. Graff to prevail in a negligence action against Amtrak, she must show that Amtrak breached some duty that it owed her, and that this breach proximately caused an injury to her. *See Jones v. Chicago HMO Ltd.*, 730 N.E.2d 1119, 1129 (Ill. 2000).[1] The only issue raised by Amtrak in its motion for summary judgment is the issue of proximate causation.

Proving proximate causation traditionally requires a plaintiff to show "that defendant's negligence 'more probably than not' caused plaintiff's injury." *Holton v. Memorial Hosp.*, 679 N.E.2d 1202, 1207 (Ill. 1997). Amtrak argues that because any individual stroke victim has only a 30% chance of benefitting from timely administration of tPA, it is impossible for Ms. Graff to show that

---

[1] Neither side here suggests that anything other than Illinois law governs the substantive issues in this case. I therefore proceed under that assumption.

3

3

(1986). In determining whether a genuine issue of material fact exists, I "construe all facts in the light most favorable to the nonmoving party and draw all reasonable and justifiable inferences in that party's favor." *Popovits*, 185 F.3d at 731 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). However, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *see also Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994).

II. Analysis

In order for Ms. Graff to prevail in a negligence action against Amtrak, she must show that Amtrak breached some duty that it owed her, and that this breach proximately caused an injury to her. *See Jones v. Chicago HMO Ltd.*, 730 N.E.2d 1119, 1129 (Ill. 2000).[1] The only issue raised by Amtrak in its motion for summary judgment is the issue of proximate causation.

Proving proximate causation traditionally requires a plaintiff to show "that defendant's negligence 'more probably than not' caused plaintiff's injury." *Holton v. Memorial Hosp.*, 679 N.E.2d 1202, 1207 (Ill. 1997). Amtrak argues that because any individual stroke victim has only a 30% chance of benefitting from timely administration of tPA, it is impossible for Ms. Graff to show that

---

[1] Neither side here suggests that anything other than Illinois law governs the substantive issues in this case. I therefore proceed under that assumption.

it is more likely than not (a showing requiring greater than 50% certainty) that her injuries would have been less severe if given tPA. Amtrak's argument is premised on the idea that Ms. Graff's claimed injury is the marginal increase in harm she suffered as a result of not receiving tPA. Amtrak argues that because there is a 70% chance that she would have suffered this harm even if its conduct had not caused a delay in administering tPA, she could not show that Amtrak's conduct more likely than not caused this injury.

This analysis misunderstands the nature of Ms. Graff's injury. Her injury is not the marginal increase in harm that occurs when tPA is not administered. Her injury is the failure itself to administer tPA at all. Had she been given tPA, she would have enjoyed a 30% chance at reducing her harm. It is this lost chance, the lost opportunity to have even a 30% chance at reducing her harm, that constitutes her injury. *See generally Doll v. Brown*, 75 F.3d 1200, 1205-06 (7th Cir. 1996) (Posner, J.) (discussing probabilistic injuries). The Illinois Supreme Court explicitly endorsed this "lost chance" doctrine in *Holton v. Memorial Hospital*. 679 N.E.2d at 1213. In applying the doctrine, the court in that case held that "evidence which shows to a reasonable certainty that negligent delay in diagnosis or treatment lessened the effectiveness of treatment is sufficient to establish proximate cause." *Id.* at 1211 (internal citation and emphasis omitted). Here, the failure to administer tPA lessened the effectiveness of

4

Ms. Graff's overall treatment. The fact that Ms. Graff's chance of benefitting from tPA was only 30% is irrelevant. *See id.* at 1213 ("We. . . reject the reasoning of cases which hold, as a matter of law, that plaintiffs may not recover. . . if they are unable to prove that they would have enjoyed a greater than 50% chance of survival absent the alleged malpractice of the defendant.").

Amtrak cites several post-*Holton* decisions to support its argument that a lost chance of less than 50% effectiveness cannot establish proximate causation. These cases, however, focus on the existence of specific procedures that were negligently withheld, rejecting plaintiffs' claims not because the expected benefit of any treatment was less than 50%, but because plaintiffs failed to indicate specifically which beneficial treatments were withheld. *See Reed v. Jackson Park Hosp. Found.*, 758 N.E.2d 868, 877-78 (Ill. App. Ct. 2001) (affirming summary judgment for defendant where record did not disclose any potential treatment for decedent's condition); *Townsend v. University of Chicago Hosps.*, 741 N.E.2d 1055, 1061 (Ill. App. Ct. 2000) (reversing jury verdict for plaintiff where record did not disclose any potential treatment for plaintiff's condition); *Aguilera v. Mount Sinai Hosp. Med. Ctr.*, 691 N.E.2d 1, 7 (Ill. App. Ct. 1997) (affirming j.n.o.v. in defendant's favor where there was no evidence that an earlier diagnostic exam would have led to surgical intervention or any other treatment). In contrast, in *Meck v. Paramedic Services of*

5

*Illinois*, 695 N.E.2d 1321 (Ill. App. Ct. 1998), the Illinois Appellate Court reversed summary judgment for a defendant where the plaintiff cited seven specific procedures not taken (including failure to inject enough Epinephrine), even though plaintiff could not show that the procedures would have increased decedent's chance of survival by more than 50%. *Id.* at 1324. Here, there is no dispute that Dr. Siddique sought to administer tPA, and that tPA gives patients a 30% chance of improvement or full recovery. If Amtrak's alleged negligence was the proximate cause of the failure to administer tPA to Ms. Graff, it can be found liable.[2]

In Illinois, the proximate cause analysis takes the form of a two-part inquiry: Was the defendant's negligence "a material and substantial element in bringing about the injury" (cause in fact), and, if so, "was the injury of a type that a reasonable person would see as a likely result of his or her conduct" (legal cause)? *First Springfield Bank & Trust v. Galman*, 720 N.E.2d 1068, 1072 (Ill. 1999). Regardless of whether Amtrak's alleged negligence was a cause in fact of the failure to administer tPA to Ms. Graff, it was not the legal cause. Here, it is undisputed that Ms. Graff arrived at the hospital at 5:10 p.m. (Def.'s Statement of Facts

---

[2] While *Holton* and its progeny are all medical malpractice cases against hospitals and physicians, there is no reason why they cannot be applied to other types of negligence actions against other types of tortfeasors. *Holton* held that the standard of proximate cause used in malpractice cases is the same standard of proximate cause used in other negligence actions. 679 N.E.2d at 1209.

6

¶ 13.) There is some dispute regarding the exact time of Ms. Graff's stroke,[3] but even assuming it took place as early as 3:14 when the train left the station in Joliet, plaintiff was in the hospital in less than two hours, leaving over a one hour window in which to diagnose Ms. Graff and obtain consent from her daughters to administer tPA. It is undisputed that Dr. Siddique determined that Ms. Graff fulfilled all necessary criteria for receiving tPA within the three hour window. (Def.'s Statement of Facts ¶ 14.) Further, both daughters admit that they had close to fifteen minutes to decide whether or not to give their consent. (Nelson Dep. at 203-04); (Wiberg Dep. at 85.) The decision to withhold consent was entirely the daughters'.[4] Amtrak neither caused the daughters to withhold consent, nor reasonably could have anticipated that decision as a likely consequence of its conduct. *See First Springfield Bank,* 720 N.E.2d at 1073. At best, Amtrak created a condition (a shortened window of time for Ms. Graff's daughters to consult with doctors and decide on consent) that made

---

[3] Amtrak states that Ms. Nelson reported to attending physicians at the hospital that Ms. Graff first appeared ill at 3:40 p.m. (Def.'s Statement of Facts ¶ 4), while Ms. Graff claims that her symptoms were evident around 3:20 p.m. (Pl.'s Statement of Facts ¶ 1).

[4] Ms. Graff argues that Amtrak has waived any argument relating to her family members' withholding consent by failing to adequately develop the argument. (Pl.'s Mem. in Opp'n to Summ. J. at 2 n.1.) While Amtrak focused its energy on the "lost chance" doctrine, it made sufficient reference to Ms. Graff's daughters' failure to consent in its briefs and statement of facts to preclude waiver.

7

the injury (failure to administer tPA) possible. The failure to administer tPA was actually caused, however, by the subsequent independent acts of the daughters in withholding their consent. Amtrak's alleged negligence in creating the condition is thus not the proximate cause of the injury. See id. at 1071 ("[I]f the negligence charged does nothing more than furnish a condition by which the injury is made possible, and that condition causes an injury by the subsequent, independent act of a third person, the creation of the condition is not the proximate cause of the injury.").

III. Conclusion

Because Amtrak's alleged negligence was not the proximate cause of Ms. Graff's failure to receive tPA, Amtrak's motion for summary judgment is GRANTED.

ENTER ORDER: *Elaine E. Bucklo*

---
**Elaine E. Bucklo**
United States District Judge

Dated: September 23, 2002