# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Elaine E. Bucklo | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 2739 | **DATE** | 5/29/2003 |
| **CASE TITLE** | Graff vs. National Railroad, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due _____. Reply to answer brief due _____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order denying Amtrak's motion for summary judgment. Pretrial order will be due by 7/15/03; and response to any motions in limine by 7/29/03. Pretrial conference set for 9/19/03 at 4:00 p.m. Trial set for 11/3/03 at 9:30 a.m.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | 2 number of notices | **Document Number** |
| ✓ | No notices required. | | | |
| | Notices mailed by judge's staff. | | MAY 30 2003 date docketed | 57 |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | | AR docketing deputy initials | |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | 5/29/2003 date mailed notice | |
| MPJ | courtroom deputy's initials | Date/time received in central Clerk's Office | MPJ mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

BARBARA GRAFF, )
)
        Plaintiff, )
)
v. )
) No. 00 C 2739
NATIONAL RAILROAD PASSENGER )
CORPORATION, )
)
        Defendant. )

## MEMORANDUM OPINION AND ORDER

Plaintiff Barbara Graff sued Defendant National Railroad Passenger Corporation ("Amtrak"), as well as other parties who have since been dismissed, for injuries relating to a stroke she suffered while a passenger on board an Amtrak train to Chicago. This case was originally brought in Illinois state court, but was removed by Amtrak. I have jurisdiction because Amtrak was incorporated by an act of Congress, and the United States owns a majority of its capital stock. *See* 28 U.S.C. § 1331; 28 U.S.C. § 1349; *Vasquez v. North County Transit Dist.*, 292 F.3d 1049, 1060 (9th Cir. 2002). Amtrak now moves for summary judgment. I deny the motion.

### I. Background

On March 27, 1998, Ms. Graff and her two adult daughters, Amber Nelson and Carrie Wiberg, were passengers on board an Amtrak train traveling from Little Rock, Arkansas to Chicago. At 3:14

p.m., the train left Joliet Station en route to Chicago Union Station. Shortly after departure, Ms. Graff suffered a stroke. At 4:10 p.m., the train arrived at Union Station. By 4:26 p.m., two emergency units from the Chicago Fire Department had arrived on the scene and made contact with Ms. Graff by 4:32 p.m. The paramedics left Union Station with Ms. Graff at 5:00 p.m. and arrived at Northwestern Memorial Hospital at 5:10 p.m.

At the hospital, Dr. Teepu Siddique, a neurologist, determined that Ms. Graff was a candidate for the administration of a drug known as tPA. The medical consensus in this case is that there is an approximately 30% chance of improvement or complete recovery in patients who receive tPA within three hours of a stroke. There are, however, risks associated with tPA that apparently increase dramatically if it is administered more than three hours after a stroke. One of Ms. Graff's daughters allegedly consented to the treatment, but then withdrew her consent when she realized the three hour window had closed. Whatever the reason, it is undisputed that tPA was not administered.

Summary judgement is proper when "there is no genuine issue as to any material fact and. . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Popovits v. Circuit City Stores, Inc., 185 F.3d 726, 731 (7th Cir. 1999) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). In determining whether a genuine issue of material fact

exists, I "construe all facts in the light most favorable to the nonmoving party and draw all reasonable and justifiable inferences in that party's favor." *Popovits*, 185 F.3d at 731 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). However, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *see also Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994).

## II. Analysis

In order for Ms. Graff to prevail in a negligence action against Amtrak, she must show that Amtrak breached some duty that it owed her, and that this breach proximately caused an injury to her. *See Jones v. Chicago HMO Ltd.*, 730 N.E.2d 1119, 1129 (Ill. 2000).[1] The only issue raised by Amtrak in its motion for summary judgment is the issue of proximate causation.

Proving proximate causation traditionally requires a plaintiff to show "that defendant's negligence 'more probably than not' caused plaintiff's injury." *Holton v. Memorial Hosp.*, 679 N.E.2d 1202, 1207 (Ill. 1997). Amtrak argues that because any individual stroke victim has only a 30% chance of benefitting from timely administration of tPA, it is impossible for Ms. Graff to show that it is more likely than not (a showing requiring greater than 50%

---

[1] Neither side here suggests that anything other than Illinois law governs the substantive issues in this case. I therefore proceed under that assumption.

3

certainty) that her injuries would have been less severe if given tPA. Amtrak's argument is premised on the idea that Ms. Graff's claimed injury is the marginal increase in harm she suffered as a result of not receiving tPA. Amtrak argues that because there is a 70% chance that she would have suffered this harm even if its conduct had not caused a delay in administering tPA, she could not show that Amtrak's conduct more likely than not caused this injury.

This analysis misunderstands the nature of Ms. Graff's injury. Her injury is not the marginal increase in harm that occurs when tPA is not administered. Her injury is the failure itself to administer tPA at all. Had she been given tPA, she would have enjoyed a 30% chance at reducing her harm. It is this lost chance, the lost opportunity to have even a 30% chance at reducing her harm, that constitutes her injury. *See generally Doll v. Brown*, 75 F.3d 1200, 1205-06 (7th Cir. 1996) (Posner, J.) (discussing probabilistic injuries). The Illinois Supreme Court explicitly endorsed this "lost chance" doctrine in *Holton v. Memorial Hospital*. 679 N.E.2d at 1213. In applying the doctrine, the court in that case held that "evidence which shows to a reasonable certainty that negligent delay in diagnosis or treatment lessened the effectiveness of treatment is sufficient to establish proximate cause." *Id.* at 1211 (internal citation and emphasis omitted). Here, the failure to administer tPA lessened the effectiveness of Ms. Graff's overall treatment. The fact that Ms. Graff's chance of

benefitting from tPA was only 30% is irrelevant. *See id.* at 1213 ("We . . . reject the reasoning of cases which hold, as a matter of law, that plaintiffs may not recover. . . if they are unable to prove that they would have enjoyed a greater than 50% chance of survival absent the alleged malpractice of the defendant.").

Amtrak cites several post-*Holton* decisions to support its argument that a lost chance of less than 50% effectiveness cannot establish proximate causation. These cases, however, focus on the existence of specific procedures that were negligently withheld, rejecting plaintiffs' claims not because the expected benefit of any treatment was less than 50%, but because plaintiffs failed to indicate specifically which beneficial treatments were withheld. *See Reed v. Jackson Park Hosp. Found.*, 758 N.E.2d 868, 877-78 (Ill. App. Ct. 2001) (affirming summary judgment for defendant where record did not disclose any potential treatment for decedent's condition); *Townsend v. University of Chicago Hosps.*, 741 N.E.2d 1055, 1061 (Ill. App. Ct. 2000) (reversing jury verdict for plaintiff where record did not disclose any potential treatment for plaintiff's condition); *Aguilera v. Mount Sinai Hosp. Med. Ctr.*, 691 N.E.2d 1, 7 (Ill. App. Ct. 1997) (affirming j.n.o.v. in defendant's favor where there was no evidence that an earlier diagnostic exam would have led to surgical intervention or any other treatment). In contrast, in *Meck v. Paramedic Services of Illinois*, 695 N.E.2d 1321 (Ill. App. Ct. 1998), the Illinois

Appellate Court reversed summary judgment for a defendant where the plaintiff cited seven specific procedures not taken (including failure to inject enough Epinephrine), even though plaintiff could not show that the procedures would have increased decedent's chance of survival by more than 50%. *Id.* at 1324. Here, there is no dispute that Dr. Siddique sought to administer tPA, and that tPA gives patients a 30% chance of improvement or full recovery. If Amtrak's alleged negligence was the proximate cause of the failure to administer tPA to Ms. Graff, it can be found liable.[2]

In Illinois, the proximate cause analysis takes the form of a two-part inquiry: Was the defendant's negligence "a material and substantial element in bringing about the injury" (cause in fact), and, if so, "was the injury of a type that a reasonable person would see as a likely result of his or her conduct" (legal cause)? *First Springfield Bank & Trust v. Galman,* 720 N.E.2d 1068, 1072 (Ill. 1999). Here, it is undisputed that Ms. Graff arrived at the hospital at 5:10 p.m. (Def.'s Statement of Facts ¶ 13.) There is some dispute regarding the exact time of Ms. Graff's stroke, but while Ms. Graff presents evidence that her stroke began at 3:20 (Pl.'s Statement of Facts ¶ 1; Pl.'s Supplemental Facts ¶ 7), she

---

[2] While *Holton* and its progeny are all medical malpractice cases against hospitals and physicians, there is no reason why they cannot be applied to other types of negligence actions against other types of tortfeasors. *Holton* held that the standard of proximate cause used in malpractice cases is the same standard of proximate cause used in other negligence actions. 679 N.E.2d at 1209.

6

does not deny Amtrak's statement that Ms. Nelson reported to hospital staff that her mother's symptoms began at 3:40 (Def.'s Statement of Facts ¶ 4).[3] Ms. Graff also does not dispute that Dr. Siddique determined that she was a candidate for tPA within three hours of the time reported as the onset of her stroke, that is, no later than 6:40. (Def.'s Statement of Facts ¶ 14.) In fact, she herself presents evidence that Dr. Siddique confirmed his determination around 6:30. (Pl.'s Supplemental Facts ¶ 44.) Ms. Nelson stated in her deposition that two to three minutes after she was asked for consent, she realized that the window had closed by about 20 minutes. (Nelson Dep. at 202-06.) Assuming she means that she realized the window had actually closed at 6:20, this evidence puts the time at which Dr. Siddique sought consent somewhere around 6:37 or 6:38. Ms. Nelson initially consented to the administration of tPA, but then told Dr. Siddique not to do so because the three hour window had actually closed. (Pl.'s Statement of Facts ¶ 5; Pl.'s Supplemental Facts ¶ 14.)

Reading the evidence in the light most favorable to Ms. Graff, the facts are as follows: Ms. Graff had a stroke at 3:20, she arrived at the hospital at 5:10, her daughters told hospital staff

---

[3] In her response to Defendant's statement of facts ¶ 4, Ms. Graff points to her own statement of facts ¶ 1. In that paragraph she alleges that the stroke began at 3:20, but she does not contest Amtrak's statement that Ms. Nelson told hospital staff 3:40, a statement supported by the record. (Nelson Dep. at 175-77, 207-08.)

7

that the stroke occurred at 3:40, Dr. Siddique determined that she was a candidate for tPA around 6:30, he sought consent from her daughters within the next seven to eight minutes, and Ms. Nelson initially gave consent but then withdrew it when she realized that the three hour window had actually closed.

There were thus about ninety minutes between Ms. Graff's arrival at the hospital (5:10) and Ms. Nelson's initial consent (around 6:40). There are two possibilities here. Either it generally takes a doctor ninety minutes to confirm that a stroke victim such as Ms. Graff is a tPA candidate and obtain her family's consent, or it takes a doctor less than ninety minutes to do so, but Dr. Siddique took ninety minutes here because he thought he had that much time based on the mistaken report from Ms. Graff's daughters that the stroke occurred at 3:40. Under the second scenario, if it should normally take seventy minutes or less to diagnose a stroke victim and obtain consent, Amtrak's alleged delay would not be the proximate cause of Ms. Graff's failure to receive tPA. Amtrak got Ms. Graff to the hospital with seventy minutes to spare before the closing of the three hour window that allegedly began running at 3:20. Any delay at the hospital caused by the independent acts of Ms. Graff's daughters in reporting the wrong onset time of the stroke would not be the natural and probable result of Amtrak's delay. See *First Springfield Bank,* 720 N.E.2d at 1071 ("The test that should be applied in all proximate cause

8

cases is whether the first wrongdoer reasonably might have anticipated the intervening efficient cause as a natural and probable result of the first party's own negligigence.").

Under the first scenario, however, that it generally takes a doctor ninety minutes to diagnose and obtain consent, Amtrak's alleged delay *would* be the proximate cause of Ms. Graff's failure to receive tPA. In that case, an alleged delay would be both the cause in fact of Ms. Graff's failure to receive tPA (because absent a delay, Dr. Siddique could have had the ninety minutes necessary to diagnose and obtain consent), see *id.* at 1073, and the legal cause (because a stroke victim's failure to receive time-sensitive treatment is an injury that a reasonable person could see as a likely result of that person's delay in getting the victim to a hospital), see *id.* Any subsequent conduct on the part of Ms. Graff's daughters would be irrelevant.

Amtrak argues that it does not take ninety minutes to diagnose a stroke and obtain consent for tPA. It cites a recommendation from the National Institute of Neurological Disorders and Stroke ("NINDS") that stroke treatment should be initiated within sixty minutes of arrival at the hospital.[4] More importantly, it points to deposition testimony of Dr. Siddique, in which he states that even if the onset of the stroke had been at 3:20, there would have

---

[4] Amtrak did not submit a copy of the NINDS report, and its citation to the NINDS website was insufficient for me to locate the report online.

9

been sufficient time before the close of the window to determine whether tPA should be administered, even if Ms. Graff had not arrived at the hospital until 5:10. (Siddique Dep. at 64.) However, proximate cause is ordinarily a question for the trier of fact, *First Springfield Bank,* 720 N.E.2d 1071, and I cannot say that normative recommendations of the NINDS and hypothetical testimony of Dr. Siddique entitle Amtrak to judgment as a matter of law.

### III. Conclusion

Ms. Graff's failure to receive tPA was an injury. Because there exists a genuine issue as to whether Amtrak's alleged delay was the proximate cause of this injury, Amtrak's motion for summary judgment is DENIED.

**ENTER ORDER:**

*Elaine E. Bucklo*

**Elaine E. Bucklo**
United States District Judge

Dated: May 24, 2003